**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OFPENNSYLVANIA**

| | | |
|---|---|---|
| IN RE:      Jonathan J. Maginnis : | Chapter 7 | |
|             Debtor : : | No.      17-14069 - AMC | |
| Bradley J. Puetz  D/B/A Desert Tactical : : | | |
|             Plaintiff : | AP No.  17-00311 | |
|             v. : : | | |
| Jonathan J. Maginnis D/B/A ClientMax Marketing : : | | |
|             Defendant | | |

**MEMORANDUM OF LAW IN SUPPORT OF RESPONSE TO THE MOTION OF BRADLEY J. PUETZ D/B/A  DESERT TACTICAL TO COMPEL ENFORCEMENT OF SETTLEMENT AGREEMENT**

**I.      STATEMENT OF THE ISSUE**

Whether or not a proposed verbal proposed settlement agreement can be enforced when there has been no mutual assent, the terms delineated by the drafter are subject to approval by the court and the introduction of the settlement negotiations are barred by FRE 408.

Short Answer:  The settlement agreemnt are not enfrocable

**II.     STATEMENT OF THE CASE**

Before the Court is Plaintiff's Motion to Compel the Enforcement of the Settlement Agreement between Puetz and Jonathan J. Maginnis d/b/a ClientMax Marketing (the Debtor or Defendant) pursuant to 11 U.S.C. §105 and for an Order Compelling the Defendant to sign and comply with the Settlement Agreement ("Motion to Compel").  Plaintiff contends that through some sort of contractual alchemy the negotiations entered into under the auspices FRE 408 in order to settle the adversary should now be e binding agreement.  For the reasons state below this motion should be summarily dismissed.

### III. FACTS

1. On June 9, 2017 (Petition Date) Debtor filed for protection under Chapter 13 of the United States Bankruptcy Code 11. U.S.C. § 101*et seq*. Docketed as 17-14069 (AMC).

2. On October 20, 2017 Movant commenced an Adversary proceeding by filing a Complaint with the Bankruptcy Court docketed as 17-0031 (AMC) <u>Bradley J. Puetz d/b/a Desert Tactical v. Jonathan J. Maginnis d/b/a Clinet Max.</u>

3. After the Adversary was filed Debtors the counsel and Movants Counsel engaged in a series of communications, many of which were characterized as being subject to FRE 408[1], aimed toward settlement of the adversary proceeding.

4. On October 26, 217 Debtor's then Counsel sent an email, again within the confines of FRE 408, to Movant's counsel stating "my client is in agreement to deem the subject debt non-dischargeable, tool the statute of limitations for collectability {sic} and also deem the automatic stay in effect as an operation of law." (A true and correct copy of the October 26, 2017 email is attached hereto and incorporated as EXHIBIT A)

5. No response to the above email was received from Movant's Counsel until November 2, 2017. In an email to Debtor's then Counsel Movant's Counsel writes "I am scheduled to talk to my client later this afternoon, I will let you know." (A true and correct copy of the November 2, 2017 email is attached hereto and incorporated as EXHIBIT B)

6. Again on November 13, 2017 Movant's Counsel writes "I have spoken to my client and I will be forwarding *A PROPOSAL* to resolve the adversary proceeding to you shortly…" (emphasis added) As is clear that email suggest only a

---

[1] Most if not all Email communication between Debtor's then counsel and Movant's counsel, on and after December 8, 2017, contained a notice limiting them to communications Subject to FRE 408: to wit "*** Settlement Communication Subject to FRE 408***" is clearly and unambiguously stated in the subject line in the email communications between counsels.

proposal not an firm agreement. (A true and correct copy of the November 13, 2017 email is attached hereto and incorporated as EXHIBIT B)

7. On or about November 16, 2017 Movant and Debtor entered into a stipulation t extend Debtor's time to answer the Adversary Proceeding to and including December 22, 2017 and this court entered an Order approving the stipulation on November 20, 2,017.

8. On November 30, 2017 Debtor's the Counsel wrote to Movants counsel stating in relevant part "I have yet to receive the email detailing you *proposal* to resolve the adversary proceeding. (A true and correct copy of the November 16, 2017 email is attached hereto and incorporated as EXHIBIT C)

9. On December 8, 2017 Movant's. Counsel sent an email, subject to FRE 408, to Debtor's then counsel stating:

Brad:

I have discussed your PROPOSAL with my client and, *SUBJECT TO* a satisfactory agreement approved by the entry of an order of the Bankruptcy Court under rule 9019, he will agree to settle the above references adversary proceeding on the following terms:

Entry of a consent judgment of nondischargeablity the survives conversion of the bankruptcy case to any other chapter of the Bankruptcy Code and is effective in any future bankruptcy case if the current case is dismissed for any reason;

Receipt of payments under any confirmed plan by Bradley Puetz does not affect nondischargeable nature of claim;

The Statute of limitations for the execution of the judgment does not begin running until the earlier of (a) the automatic stay is lifted; (b) the case is converted to any other chapter of the Bankruptcy Code; or (c) the bankruptcy case is dismissed for any reason;

The automatic stay os modified for the limited purpose of domesticating the California Judgment in Delaware County, Pennsylvania

Relief from the stay without further order of the Bankruptcy Court if the case is converted to any other chapter of the Bankruptcy Code; and

> Bradley Puetz reserves the rights as a creditor in the bankruptcy case and as to third parties outside the bankruptcy case.
>
> I am happy to further extend your time to answer the Complaint to give us time to gat a stipulation together.  Please forward the amended plan to my attention as soon as it is drafted.
>
> Thank you.
> Michael

(A true and correct copy of the December 8, 2017 email is attached hereto and incorporated as EXHIBIT D)

10. On December 14, 2017 the Chapter 13, Trustee filed a Motion to Dismiss or convert the case as Debtor exceeded the unsecured limits for availability of a Chapter 13proscribed by congress. (A true and correct copy of the December 14, 2017 Motion is attached hereto and incorporated as EXHIBIT E)

11. On December 20, 2017 Movant and Debtor entered into a second stipulation to extend the Debor's time to answer the Adversary Complaint to and including January 22, 2018 and this Court entered an Order approving the stipulation on December 22, 2017.

12. On December 21, 2017 Debtors then Counsel sent an Email, Subject to FRE 408, requesting that Movant compromise his claim in order to further the Chapter 13. (A true and correct copy of the December 21, 2017 email is attached hereto and incorporated as EXHIBIT F)

13. After no response from Movant's Counsel to the above email, Debtor's then Counsel wrote on January 4, 2018;
""Michael:
Any thoughts regarding my December 21 2017 below email?"  (A true and correct copy of the January 4, 2018 email is attached hereto and incorporated as EXHIBIT G)

14. On January 16, 2018 Debtor's The Counsel withdrew his appearance and Anthony Frigo Entered appearance for Debtor.

15. On January 18, 2018 Movants Counsel forwarded a *Proposed Settlement Agreement*(emphasis added) to Debtor's former Counsel.  In that same email Movant's counsel states pointedly *"My Client is Still Reviewing the stipulation as well…"* (A true and correct copy of the January 18, 2018 email is attached hereto and incorporated as EXHIBIT H)

16. On January 18, 2018 Debtor's Counsel called Movant's Counsel to introduce himself.  During that call Debtor's counsel indicated he was unaware of the discussions to settle the adversary proceeding.  Movant's cousel sent an email containing the same proposed settlement agreement sent to Debtor's former counsel and attaching a Stipulation extending the time to answer the Adversary.

### III.    SUMMARY OF THE ARGUMENT

### IV.    ARGUMENT

### 1.    THERE HAS BEEN NO MUTUAL ASSENT

When the existence of a settlement agreement is contested "basic contract principles" are applied to resolve the dispute.  In re Cedent corp. Prides Litigation 233 F3d 188, 193(3d Cir. 2000); Standard Steel, LLC v. Buckeye Energy, Inc. 2005 WL 2403636, *9 (W.D. Pa Sept. 2005).  In this case there is no demonstrable Mutual Assent.  Counsel for Movant seems to be invoking some kind of contractual alchemy and asserting that there was assent between the parties.

Nowhere in the course of the discussions between Debtor's then counsel or Debtors current counsel and Movant's counsel is there an indication that there was mutual assent to essential terms.  To wit, as of December 8, 2017 the parties had not reached a consensus on the central issues in the Proposed agreement.  On December 8, 2017 Movants counsel had sent an email to Debtor's then counsel outlining certain terms he desired to be included in the proposed agreement.  On that same date, Debtor's the counsel replied adding an additional condition that the Statute of limitations does not begin running until "upon successful completion and closing of the Chapter 13 case." (See Exhibit F)  In addition,  as late as January 18, 2018, after Debtor's original counsel

had withdrawn his appearance, Movant's counsel stated in an email that to Debtor's former counsel, "my client is still reviewing the proposal." (See Exhibit H)  In fact, it was only after Mr. Frigo entered the case that any "Proposed Agreement" was ever produced for review.  Initially that Proposal was sent to Debtor's former counsel but later, only after Mr. Frigo contacted Movant's Counsel, was that proposed agreement forwarded to Mr. Frigo at all.  In addition the draft of the proposed agreement contained terms not discussed at any time prior.

The Proposed agreement Contained the following language:

"The automatic stay provided for under Section 362 of the Bankruptcy Code …(ii)  shall be lifted as to any action Puetz may want to take to commence execution on and collect on the Judgment without further order of the Bankruptcy Court if the above captioned case is converted to Chapter 7 of the Bankruptcy Code and it is acknowledged and agreed by the Parties that the automatic stay is hereby modified by the provisions of thia Agreement and that the Final Order approving this Agreement shall so provide."

The record is devoid of any reference to such modification of the stay and it was central to the Debtors understanding and intent that any settlement would include an extended time for the stay to remain in effect.

Furthermore, as stated above, Debtor's then counsel, added an additional term "upon successful completion and closing of the Chapter 13 case." On December 14, 2017 the trustee filed his motion to dismiss (attached as Exhibit E) the chapter 13 case citing that the unsecure debt limitations were exceeded.  The trustee's motion significantly changed the playing field for the Debtor in that without the Chapter 13 the stay would no longer be in effect for a period not to exceed five years.  In response Debtor's then counsel attempted to negotiate a compromise of the proof of claim such that Debtor could remain in the Chapter 13.  (See Exhibits G and H) and Movant's counsel refused. (See Exhibit H) .

2. **Movants December 8, 2017 Stipulates that any Settlement agreement is subject to approval by the court.**

Movant's December 8, 2017 email states " I have discussed your proposal to my client and. *SUBJECT TO a satisfactory settlement agreement approved by the entry of an order of the bankruptcy court under rule 9019, he will agree to settle the above referenced adversary proceeding on the following terms:"* (emphasis added). This term, inserted by Movant, is completely unambiguous and states a condition precedent to the formation of an agreement between the parties. "A contract is ambiguous only if it is "written so imperfectly that it is susceptible to more than one reasonable interpretation." Pacific Union Employers Insurance Company v. Global Reinsurance Corporation of America 693 F.3d 417, 426 (2012) citing Brad H v. City of New York 17 N.Y. 3d 180, 928 N.Y.S.2d 221, 951 N.E. 2d 743, 746. "Because "the law does not assume the that the language of the contract was chosen carelessly '"that language is of paramount importance. Meeting House Lane, LTD v. Melso 427 PA Super 118, 628 A.2d 854, 857 (1993). "The parties have a right to make the their own contract and it is not the function of the court t rewrite it or give it a construction in conflict with the accepted and plain meaning of the language used/" Pacific Union Employers Insurance Company v. Global Reinsurance Corporation of America 693 F.3d 417, 426 (2012) citing Bomber v. W Am Ins. Co., 932 A.2d 78, 99 (Pa. Super Ct. 2007. Furthermore "it is a general rule of interpretation that an expression is to be interpreted *most strongly against the party responsible for the drafting"* John Edward Murray, Jr., Murray on Contracts, §88 G, 3rd ed 1990 and in this case the drafter is Movant's counsel and he inserts a condition precedent to the formation potential formation of an agreement, specifically approval of the Bankruptcy Court under Rule 9019.

**3.    Introduction of the Settlement Negotiations are Barred by Federal Rule of Evidence 408**

Rule 408 states as follows:

> Rule 408. Compromise Offers and Negotiations
> **(a) Prohibited Uses.** Evidence of the following is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
> **(1)** furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim; and
> **(2)** conduct or a statement made during compromise negotiations about the claim — except when offered in a criminal case and when the negotiations related to a

claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
**(b) Exceptions.** The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

From Admissibility of Settlement-Related Evidence at Trial, ABA Section of Litigation, Gerald E. Burns, July 31, 2013:

Rule 408's exclusion of settlement-related evidence is based on two principles. First, settlement-related evidence is considered to be irrelevant because settlement offers may be motivated by a desire for peace, a desire to avoid costly legal battles, or for any number of reasons that have nothing to do with the merits of the claim. *McCormick on Evidence* § 76.251.

The second, and more important, reason for excluding settlement-related evidence under Rule 408 is to promote the amicable resolution of lawsuits. *See Affiliated Mfrs., Inc. v. Aluminum Co. of Am., Inc.*, 56 F.3d 521, 526 (3d Cir. 1995) ("[T]he policy behind Rule 408 is to encourage freedom of discussion with regard to compromise."). The Sixth Circuit Court of Appeals explained this rationale in more detail in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003):

> There exists a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations. This is true whether settlement negotiations are done under the auspices of the court or informally between the parties. The ability to negotiate and settle a case without trial fosters a more efficient, more cost-effective, and significantly less burdened judicial system. In order for settlement talks to be effective, parties must feel uninhibited in their communications. Parties are unlikely to propose the types of compromises that most effectively lead to settlement unless they are confident that their proposed solutions cannot be used on cross examination, under the ruse of "impeachment evidence," by some future third party. . . . Without a privilege, parties would more often forego negotiations for the relative formality of trial. Then, the entire negotiation process collapses upon itself, and the judicial efficiency it fosters is lost.

Here counsel for Movant, in most if not all of communication proposing settlement of the litigation via email , put in the subject line ""***Puetz v. Maginnis*** Settlement Communication Subject to FRE 408***.  (see generally Exhibits D, F, G and H). Movant cannot now, after settlement negotiations have terminated, come forth and insists

that those negotiations are admissible as evidence to support the proposition that there has been mutual assent between the parties and an agreement has been struck.

### V.  **CONCLUSION**

This is a simple case that should be ruled upon in favor of Defendant Debtor. There has been no indication that there was mutual assent to any proposed settlement agreement.  By its own terms, and as the drafter intended,  any potential settlement agreement was to be "subject to' court approval.  Also the communications between counsel were done subject to FRE 408 and therefore not admissible to prove that there was an agreement.

Respectfully submitted this 23rd day of April 2018.

**THE LAW OFFICES OF ANTHONY A. FRIGO**

By: /S/ Anthony A. Frigo
Anthony A. Frigo
175 Strafford Ave., Suite One
Wayne, PA 19087